## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **JOSEPH TYLER** | **CIVIL ACTION NO. 6:14-cv-00650** |
| **LA. DOC #130174** | |
| **VS.** | **SECTION P** |
| | **JUDGE JAMES T. TRIMBLE** |
| **WARDEN N. BURL CAIN** | **MAGISTRATE JUDGE WHITEHURST** |

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 on March 25, 2014 by *pro se* petitioner Joseph Tyler. This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons, it is recommended that this *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

### STATEMENT OF THE CASE

Petitioner is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Petitioner attacks his March 23, 2005 convictions for aggravated rape, sexual battery and two counts of indecent behavior with juveniles, for which he was sentenced on May 20, 2005 to life, 10 years and seven years (each count)

imprisonment, respectively, by the Twenty-Seventh Judicial District Court for St. Landry Parish, Louisiana.

On March 1, 2006, the Louisiana Third Circuit Court of Appeal affirmed petitioner's convictions and sentences. *State v. J.T.*, 925 So.2d 55, KA-05-0997 (La. App. 3rd Cir. 2006) (unpublished) [rec. doc. 9-2, pgs. 21-29].  The Louisiana Supreme Court denied petitioner's request for discretionary review on November 22, 2006.  *State v. Tyler*, 942 So.2d 555, 2006-KO-1319 (La. 2006). On direct appeal petitioner raised a single claim – that there was insufficient evidence to support his convictions.

Petitioner filed an Application for State Post-Conviction relief on March 19, 2007.   Petitioner asserted the following claims for relief:  (1) petitioner's conviction was obtained in violation of due process and equal protection because the statute proscribing aggravated rape was selectively and discriminatorily applied to petitioner based on his race; (2) petitioner was denied due process when the prosecutor vouched for the credibility of witnesses denying petitioner his right to a fair trial and impartial jury; (3) ineffective assistance of trial counsel based on counsel's failure to object and move for a mistrial and preserve for review the fact that petitioner was allowed to wear readily identifiable prison clothes denying petitioner's right to due process and an impartial verdict; and (4) ineffective

assistance of trial counsel for failing to protect petitioner's right to be indicted by a grand jury composed of a fair cross section of the community thus violating petitioner's right to due process. [rec. doc. 1-3, pgs 3-45 through rec. doc. 1-4, pgs. 1-3].

On June 25, 2008, the trial court denied post-conviction relief in pertinent part as follows:

> In the pending motion, defendant asserts that his counsel was deficient and failed to object and move for a mistrial. Defendant also asserts that he was denied due process when the prosecutor vouched for the credibility of its witnesses.

> A review of the pertinent facts and applicable law indicated that the Defendant's claim is legally baseless and without merit.

[rec. doc. 1-4, pg. 5].

Petitioner sought writs in the Louisiana Third Circuit Court of Appeal, arguing the same four claims which were raised in the lower court. [rec. doc. 9-2, pgs. 56-77 through rec. doc. 9-3, pgs. 1-16]. On October 30, 2008, the Third Circuit granted the writ in part and denied the writ in part as follows:

> Relator contends he was denied effective assistance of trial counsel when his attorney failed to preserve for review Relator's being made to stand trial in readily identifiable prison clothes. Being forced to wear prison attire at trial has been considered reversible error. [Citations omitted] Relator has presented this court with evidence showing he may have been wearing prison garb during trial, and he alleges he can submit additional proof through witness testimony at

an evidentiary hearing. Accordingly, the trial court's ruling, insofar as it pertains to this issue, is reversed and the matter is remanded for an evidentiary hearing. In all other respects, Relator's writ application is denied.

*State of Louisiana v. J.T.*, No. KH 08-929 (La. App. 3 Cir. 10/30/2008)

(unpublished) [rec. doc. 1-4,  pg. 7]; [rec. doc. 17-5, p. 119/200].

On November 17, 2011, an evidentiary hearing was held on petitioner's claim that counsel was ineffective for failing to object and move for a mistrial and preserve for review the fact that petitioner was allowed to wear readily identifiable prison clothes during trial. [rec. doc. 1-4, pgs. 9-46].  At the conclusion of the hearing, the Court denied post-conviction relief based on two findings:  (1) "that it was strategy on the part of Mr. Lopez (defense attorney), regarding the question to the defendant regarding whether he was wearing prison garb at trial"; and (2) "that the defendant was not wearing prison garb that was marked . . . [petitioner] may have had a blue jumper, but it did not taint the jury in this case." [rec. doc. 1-4, pg. 45].

On December 13, 2011, petitioner filed Notice of Intent to seek review in the Third Circuit Court of Appeal, including a request for a transcript of the evidentiary hearing.  On January 23, 2012, the trial court granted petitioner's request for the transcript and set a return date of February 17, 2012. [rec. doc. 1-4,

pgs. 48-49 and 51].

Petitioner apparently filed his writ application in the Third Circuit on February 29, 2012; however, on May 8, 2012 the Third Circuit refused to consider the writ application because petitioner did not provide a copy of the transcript of the evidentiary hearing.  The Court advised petitioner to refile his writ application once the transcript was obtained.  *State of Louisiana v. J.T.*, No. KH-12-00262 (La. App. 3 Cir. 5/8/2012). [Doc. 1-4, pg. 53].

 On May 15, 2012, petitioner apparently refiled his writ application in the Third Circuit.  In this writ application, petitioner asserted a single claim for relief – whether the trial court denied petitioner's rights under the Fifth and Fourteenth Amendments because petitioner was forced to stand trial in prison attire. The claim is not couched in terms of ineffective assistance of counsel as was alleged in the lower court and Third Circuit prior to remand.  [rec. doc. 9-3, pgs. 24-32].

On May 10, 2013, the Third Circuit  denied the writ as follows:

This court granted Relator's prior writ application, in part, to allow an evidentiary hearing to give Relator the opportunity to present the trial court with evidence showing he may have been wearing prison garb during trial, and his counsel was ineffective for failing to preserve that issue for review. *State v. J.T.*, an unpublished writ decision bearing docket number 08-929 (La. App. 3 Cir. 10/30/08). At the hearing, the trial court further held Relator's clothing did not identify him as a prisoner and did not taint the jury. The trial court further held a question asked by defense counsel concerning Relator's clothing was

a strategic move.

The present writ application alleges Relator's Fifth and Fourteenth Amendment rights were violated when he was forced to stand trial in prison garb. This issue has not been submitted to the trial court; thus, this court may not consider it. Uniform Rules — Courts of Appeal, Rule 1-3. Accordingly, Relator's writ application is denied.

*State of Louisiana v. J.T.*, No. KH 12-0598 (La. App. 5/10/2013). [rec. doc. 1-4, pg. 55].

On May 29, 2013, petitioner sought writs in the Louisiana Supreme Court. In his writ application, petitioner argued all four of his post-conviction claims for relief, again couching his claim regarding prison garb as a claim of ineffective assistance of counsel. [rec. doc. 9-3, pg. 35-62]. On November 22, 2013 the Louisiana Supreme Court denied writs without comment. *State of Louisiana ex rel. Joseph Tyler*, 2013-KH-1364, 126 So.3d 482 (La. 11/22/2013).

Petitioner filed the instant federal *habeas corpus* petition on March 25, 2014. Petitioner asserts the following claims for relief: (1) ineffective assistance of trial counsel based on counsel's failure to object and move for a mistrial and preserve for review the fact that petitioner was allowed to wear readily identifiable prison clothes denying petitioner's right to due process and an impartial verdict; (2) that there was insufficient evidence to support petitioner's convictions; (3) petitioner was denied due process when the prosecutor vouched for the credibility of

6

witnesses denying petitioner his right to a fair trial and impartial jury; (4)

ineffective assistance of trial counsel for failing to protect petitioner's right to be

indicted by a grand jury composed of a fair cross section of the community thus

violating petitioner's right to due process, and (5) petitioner's conviction was

obtained in violation of due process and equal protection because the statute

proscribing aggravated rape was selectively and discriminatorily applied to

petitioner based on his race.

The State filed an Answer and Memorandum in Opposition to federal *habeas*

*corpus* relief [rec. doc. 17].  No Reply has been filed by petitioner.  This Report

and Recommendation follows.

<u>**LAW AND ANALYSIS**</u>

***Standard of Review***

This *habeas* petition was filed on March 25, 2014; therefore the standard of

review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism

and Effective Death Penalty Act (AEDPA).  *Knox v. Johnson,* 224 F.3d 470, 476

(5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[1]  AEDPA

---

[1]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief   . . .  exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions."  *Montoya ,* 226 F.3d at 403-04  *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

substantially restricts the scope of federal review of state criminal court

proceedings in the interests of federalism, comity, and finality of judgments.

*Montoya v. Johnson*, 226 F.3d 399, 403-04 (5ᵗʰ Cir. 2000) *citing Teague v. Lane,*

489 U.S. 288, 306 (1989) and *Williams v. Taylor,* 529 U.S. 362 (2000)[2] (noting that

AEDPA "placed a new restriction on the power of federal courts to grant writs of

*habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

    **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this court must give

deference to a state court decision for "any claim that was adjudicated on the merits

in State court proceedings" unless the decision was either "contrary to, or involved

---

[2]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the Court with respect to other aspects of the opinion which have no bearing on the issues herein.

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review . . . ."  *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court.  *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000);  *Montoya,* 226 F.3d at 403-04.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"

9

*Dowthitt,* 230 F.3d at 740.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741.  The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404.  A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741.  Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  *Id.*  Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding.  *Id.* (citing 28 U.S.C. § 2254(d)(2)); *Knox,* 224 F.3d at 476.

In sum, "[a] state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86

10

(2011). Thus, under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102–103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## I. Procedural Default - Claim One

Petitioner contends in claim 1 that he received ineffective assistance of trial counsel based on his counsel's failure to object and move for a mistrial and preserve for review the fact that petitioner was allowed to wear readily identifiable prison clothes. The State contends that petitioner's first claim for relief should be denied as procedurally defaulted.[3] In light of the above procedural history, the Court agrees.

The scope of federal habeas review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and

---

[3] In its March 7, 2015 Memorandum Order, the undersigned stated, "[a]lthough the Court has doubts as to whether petitioner properly exhausted his claim that he received ineffective assistance of trial counsel based on counsel's failure to object and move for a mistrial and preserve for review the fact that petitioner was allowed to wear readily identifiable prison clothes, no sua sponte action will be taken.  The State may raise exhaustion and/or procedural default by response herein."

that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal habeas claim. *Bledsue v. Johnson*, 188 F.3d 250, 254–55 (5th Cir.1999).

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509 (1982); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir.1999).

In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts in a "procedurally proper manner." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001). Moreover, each claim must be presented to the state's highest court, even when review by that court is discretionary. *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir.1998). In Louisiana, the highest court is the Louisiana Supreme Court.

Thus, in order for a Louisiana prisoner to have exhausted his state court

remedies, he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997). Failure to exhaust all remedies for a particular claim results in that claim being denied as procedurally defaulted. "Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred. *See Coleman*, 501 U.S. at 735 n. 1. In either instance, the petitioner is deemed to have forfeited his federal habeas claim.  *Bledsue v. Johnson*, 188 F.3d at 254.

Although petitioner presented the ineffective assistance of counsel related to Claim 1 in his post-conviction relief application and initial writ of review with the Third Circuit, he failed to re-assert the ineffective assistance claim with the Third Circuit following the remand hearing with the trial court. Instead petitioner's second application and writ to the Third Circuit couched his claim as violations of the Fifth and Fourteenth Amendments. While he again asserted the ineffective assistance claim with the Supreme Court, the Third Circuit was not afforded the opportunity to review the trial court's ruling on remand. As such, "the petitioner

13

failed to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred."

## II. Ineffective Assistance of Counsel - Claim One and Claim Four

Petitioner raises an ineffective assistance of counsel argument in Claim 1 and in Claim 4. While the Court has found that Claim 1 is procedurally defaulted, it will address both allegations, Claim 1 and Claim 4.

*Strickland v. Washington*, 466 U.S. 668 (1984) supplies the standard for addressing a claim of ineffective assistance of counsel. *United States v. Smack*, 347 F.3d 533, 537 (3d Cir.2003) (citing *Strickland* at 687). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. This standard requires a familiar two-part inquiry. "First, the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. The measure for counsel's performance under the first prong of *Strickland* is "whether counsel's assistance was reasonable considering all the circumstances" including "prevailing professional norms." *Id*. at 687–88. "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." *Id.* at 687.

To meet the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *U.S. v. Dowling*, 458 Fed.Appx. 396, 398, 2012 WL 117054, at *2 (5th Cir. 2012) (citing *Strickland* at 694). The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Ramirez v. Stephens*, ___ Fed. Appx.___, 2016 WL 454322, at *8 (5th Cir. 2016); *Medellin v. Dretke*, 371 F.3d 270, 277 (5th Cir. 2004).

In considering the allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance.  *See United States v. Cronic*, 466 U.S. 648 (1984). A fair assessment of attorney performance requires that hindsight be eliminated, and that the Court instead reconstruct the counsel's conduct under all of the circumstances of the case. *Strickland*, 466 U.S. at 689.

*Claim 1- Prison Clothes*

Even assuming *arguendo* that petitioner's claim was not procedurally barred, petitioner has failed to present any evidence of prejudice. Specifically, he has not shown that, had he not been wearing prison clothes throughout the trial, he would not have been convicted, or that he would have received a lesser sentence. Nor has he refuted the trial court's finding that the wearing of the blue jumpsuit of a prisoner was trial strategy on the part of his defense attorney. *See Smith v. Black*, 904 F.2d 950, 979 (5th Cir. 1990) *vacated on other grounds*, 503 U.S. 930 (1992) (finding not objecting to the defendant's wearing prison attire was "well within the strong presumption of sound trial strategy required by *Strickland*). In short, he has failed to establish prejudice. Because there is no reasonable probability that the outcome of the trial would have been different had he not worn prison clothes at trial his § 2254 motion on this ground should be denied.

*Claim 4 - Grand Jury*

Petitioner argues in Claim 4 that his counsel was deficient in failing to protect his right to be indicted by a grand jury that reflects a fair cross section of the community. He argues that the St. Landry Parish "Register of Voters List" and "list of Grand Jury Forepersons" from 1960 through 1996 [rec. doc. 1-2, Exh. D], shows discrimination on the basis of race in the selection of members of a grand

jury that violates fundamental fairness.

"It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division where the court convenes." 28 U.S.C. § 1861. Section 1867 of Title 28 of the United States Code provides a mechanism for challenging compliance with grand jury selection procedures. To succeed on such challenge, a criminal defendant must show a "substantial failure to comply with the provisions of [Title 28] in selecting the grand or petit jury." 28 U.S.C. § 1867(a). A substantial failure "destroys the random nature or objectivity of the selection process." *United States v. Olaniyi-Oke*, 199 F.3d 767, 772 (5th Cir.1999).

To establish a prima facie case of discrimination in the selection of a grand jury, a petitioner must demonstrate: "1) that the group against whom discrimination is asserted is a distinct class, singled out for different treatment; 2) the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve as foremen over a significant period of time; and 3) that the selection procedure is susceptible to abuse or is not racially neutral. This prima facie case may then be rebutted by evidence that objective, racially neutral criteria were used in the selection process." *Johnson v. Puckett*, 929

17

F.2d 1067, 1071-72 (5th Cir. 1991).

In *Castaneda v. Partida*, 430 U.S. 482 (1977), the Supreme Court held that to show that an equal protection violation has occurred in a grand jury context, the "defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." *Id.* at 494. To make a prima facie case, the petitioner must do three things:

> The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. This method of proof, sometimes called the 'rule of exclusion', has been held to be available as a method of proving discrimination in jury selection against a delineated class. Finally, as noted above, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.

*Id.* "Only if respondents established a prima facie case of discrimination in the selection of the [grand jury] in accord with this approach, did the burden shift to the State to rebut that prima facie case." *Rose v. Mitchell*, 443 U.S. 545, 610 (1979) (citing *Castaneda*, at 495); *see also Guice v. Fortenberry*, 661 F.2d 496, 500 (5th Cir. 1981)(en banc).

Petitioner asserts that his grand jury had defects in its composition. While African-Americans are a recognizable, distinct class, singled out for different

treatment under the laws, petitioner has made no showing of the remaining elements necessary to prove a *prima facie* case of discrimination in the grand jury selection process. Petitioner merely submitted the Registrar of Voters list with a list of grand jury forepersons from 1960 through 1996. He presented no evidence of the composition of the actual grand jury that indicted him. Petitioner, therefore failed to establish the statistical *prima facie* element of a discriminatory selection process. Nor did petitioner meet the requirement of proof that the process used is susceptible to abuse or is not racially neutral.

The requirement of proving statistical disparity in a grand jury discrimination claim is set to a high standard and has been strictly construed by the reviewing courts. *Rose* also involved a claim regarding a discriminatory process with the grand jury selection. *Id.* at 610. The *Rose* Court found that "there was no evidence as to the total number of foremen appointed by the judges" in the county during the critical period of time. *Id.* at 572. The Court stated:

> Inasmuch as there is no evidence in the record of the number of foremen appointed, it is not possible to perform the calculations and comparisons needed to permit a court to conclude that a statistical case of discrimination had been made out, and proof under the "rule of exclusion" fails.

*Id.* at 571-572.

In *James v. Whitley,* 39 F.3d 607 (5th Cir. 1994), the Fifth Circuit concluded

that the appellant could not show the degree of underrepresentation as required by the Supreme Court in *Rose* and rejected an equal protection challenge to the grand jury foreperson selection process. *Id.* There, the state appellate court determined that the appellant failed to prove the number of grand jury forepersons actually appointed between 1965 and 1979 in Ascension Parish. Citing *Rose*, the court opined that "absent such evidence, it is difficult to say that the number of Negroes appointed foreman, even if zero, is statistically so significant as to make out a case of discrimination under the "rule of exclusion." *Id*. (citing *Rose* at 610). The court denied and reversed appellant's writ of habeas corpus stating that the "Supreme Court emphasized the importance of such statistics in proving an equal protection claim," and appellant failed to prove the degree or under-representation as required by law. *James at 610-111*.

While petitioner presented the number of forepersons appointed, he failed to satisfy the statistical *prima facie* showing required to establish a discriminatory selection process and violation of Equal Protection. "A violation of the Equal Protection Clause is established by a substantial underrepresentation of race only if it results from *purposeful* discrimination. *Guice*, 633 F.2d at 708, n. 7 (citing *Castaneda*, 430 U.S. at 493).

Petitioner must satisfy both prongs of *Strickland,* demonstrating both that

counsel's performance was deficient and that the deficiency prejudiced the defense. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998). Here, petitioner failed to establish under *Strickland* how his counsel's performance was deficient in failing to object to the composition of the grand jury and how such an objection would have changed the outcome of his trial. Accordingly, petitioner's ineffective assistance of counsel Claim 4 should be dismissed.

The state trial court initially rejected all of petitioner's ineffective assistance of counsel claims, *in globo*, finding petitioner's claims "legally baseless and without merit." [rec. doc. 19-2, pg. 65]. The Louisiana Third Circuit Court of Appeal found no error in the trial court's ruling on Claim 4, the grand jury claim, but remanded Claim 1, the prison clothing claim. On remand the state trial court held an evidentiary hearing on the claim. The court denied post-conviction relief based on attorney strategy and because the blue jumper did not taint the jury. [rec. doc. 1-4, pg. 45]. The Louisiana Third Circuit denied petitioner's writ application as to Claim 1, because it was couched in terms of violation of his Fifth and Fourteenth Amendment rights rather than ineffective assistance and the issue had

not been submitted to the trial court. The Louisiana Supreme Court denied writs without comment.  Accordingly, for the reasons above, under the applicable standard of review, the Louisiana state courts disposition of petitioner's ineffective assistance of counsel Claims, 1 and 4, should not be disturbed.

## III. Sufficiency of the Evidence - Claim Two

Petitioner argues there was insufficient evidence to support his convictions of aggravated rape, sexual battery and indecent behavior with juveniles. Petitioner contends that "the testimony given by the children in this case was so inconsistent and equivocal that the essential elements of the crimes listed above were not proven beyond a reasonable doubt." [rec. doc. 1, p. 17].   In particular, petitioner alleges that "Dr. Johnson [the examining physician] did not diagnose C.J. with having genital herpes.... There was no medical evidence presented showing that the petitioner has genital herpes. Dr. Johnson also indicated that hymenal tissue would heal quickly, within days or weeks. However, the children were removed from the home of  [the mother] and Defendant on January 24, 2003, eighteen days earlier than the medical examinations." [*Id.* at p. 17].

In rejecting petitioner's sufficiency of the evidence claim on direct appeal the Louisiana Third Circuit Court of Appeal, extensively analyzed the evidence presented at trial, and found that the evidence was sufficient to support petitioner's

conviction under the federal standard set forth by the United States Supreme Court in *Jackson v. Virginia. State v. Pitts*, 87 So.3d 306, 309–315 (La. App. 3rd Cir. 2012).

The Third Circuit closely examined the testimony of each child and expressly found sufficient evidence of penetration as to each of the victims. As to Claim 1, Aggravated Rape of T.J., ten years old, the Third Circuit stated:

> T.J., ... testified that when Defendant lived with her mother, he put his private in hers about four times, three times while they were living in the projects and one time after they had all moved to her maternal grandmother's house. In a February 10, 2003 interview with Ms. Broussard, T.J. stated that these events happened only once. However, Ms. Broussard explained that she was not surprised by the discrepancy, as this is a normal pattern shown in small children being asked to remember what happened sometime in the past. Additionally, she explained that the more frequently you speak with children, the more they open up and provide detail.
>
> Dr. Carmen Johnson, accepted by the court as an expert in pediatric medicine, testified that she examined T.J. on February 27, 2013. At the time of the exam, there was notching of the hymen, which was not fully intact. Dr. Johnson explained that the tearing of the hymen could be caused by some sort of penetration. T.J. told Dr. Johnson that Defendant put his private part in hers before Christmas. Dr. Johnson confirmed that the damage she observed was coincident with T.J.'s report as to when the incident happened.

The Third Circuit next looked at Count III, Sexual Battery of C.J., ten years old. The court stated:

> Dr. Johnson examined C.J., ... on February 27, 2003 Dr. Johnson testified that there were abnormal findings to C.J.'s hymen, as well as

23

bruising and torn tissue. Further, she noted the presence of scarring and a lesion. The loose tissue, in Dr. Johnson's opinion, resulted from some traumatic entry into the vaginal area. Dr. Johnson testified that C.J. told her that defendant put his finger in her private part when they were living in the projects and that it happened the week prior to the examination; this was consistent with what Dr. Johnson observed during the examination. C.J. testified that she previously reported that Defendant used just his finger because she was afraid.

. . .

Although we note one possible discrepancy between C.J.'s testimony and that of Dr. Johnson, we nonetheless find that the State proved its case beyond a reasonable doubt as to this court. C.J. testified that the incident occurred one week prior to dr. Johnson's examination on February 27, 2013, but the record shows that the children were removed from their mother's care on January 24, 2003 However, we note that dr. Johnson's testimony did not rule out the possibility that the incident could have happened earlier than a week prior to the examination, as the line of questioning regarding the age of the injury was not pursued.

. . .

Because we do not find an irreconcilable conflict between C.J.'s testimony and dr. Johnson's findings, we conclude that the state proved the essential elements of this crime beyond a reasonable doubt.

As to Counts IV and V, Indecent behavior with L.J., nine years old,  and

Ta.J., eight years old, the Third Circuit found:

In L.J.'s interview with Dina Broussard, she said Defendant touched her on her "private stuff" between her legs, after laying her on the bed and removing her clothes. L.J. told Ms. Broussard that she had gotten a "bad touch" only that one time. Upon her examination of L.J., Dr. Johnson learned that L.J.'s hymen was not intact, being notched at the five o'clock position.

. . .

Ta. J., ... testified that during the time they lived in the projects, Defendant woke her up and touched her in her private part with his

hand. Ta.J. testified that he touched her two times. Ta. J.'s trial testimony differed from her interview with Ms. Broussard, in which she stated that, while she was asleep, Defendant jumped on her back and put his "stuff" on her left thigh. She told Mr. Broussard that this happened only once. At trial, Ta. J. testified that if she told someone that defendant jumped on her , it was not true, and that her trial testimony was the truth.

Dr. Johnson testified that Ta. J. told her that Defendant touched her in her private. Dr. Johnson noted during the examination that T.[sic] J.'s hymen was not intact. The notching and disappearance of hymenal tissue, according to Dr. Johnson, could not be caused by normal childhood activities, and it was her opinion that something was introduced into the vaginal canal.

The Third Circuit found the evidence presented by the State was sufficient to prove that Defendant committed the acts alleged in each count: aggravated rape, sexual battery and indecent behavior with juveniles.

Under the appropriate standard of review, this court cannot find that the state court's decision was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the State court record.  Accordingly, the Third Circuit's decision can not be disturbed.

The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979) (emphasis

added); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991).  Thus, a federal court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypothesis consistent with the defendant's claim of innocence." *Gibson*, 947 F.2d at 783.  Stated differently, an applicant is entitled to *habeas corpus* relief only if it is found that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.*; *West v. Johnson,* 92 F.3d 1385, 1393 (5th Cir. 1996).

This court applies the *Jackson* standard "giving great weight to the state court's determination."  *Gibson*, 947 F.2d at 782, 786; *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987).  Both direct and circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990. The fact that most of the evidence against a defendant was circumstantial does not change the standard of review.  *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5th Cir. 1991).

 Contrary to petitioner's position, as correctly noted by the Louisiana Third Circuit Court of Appeal, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury.  *United States v. Young*, 107 Fed.Appx. 442, 443 (5th Cir. 2004) *citing United States v. Garcia*, 995 F.2d 556,

561 (5ᵗʰ Cir. 1993); *Green v. Johnson,* 160 F.3d 1029, 1047 (5ᵗʰ Cir. 1998);

*Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (noting that it is the jury's responsibility

to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable

inferences from basic facts to ultimate facts.").

Accordingly, "whether judges doubt the credibility of a witness, even an

accomplice witness cooperating with the government, is beside the point . . . ."

*U.S. v. Greenwood*, 974 F.2d 1449, 1458 (5ᵗʰ Cir. 1992).  All credibility choices

and conflicting inferences are to be resolved in favor of the verdict.  *Ramirez v.*

*Dretke*, 398 F.3d 691, 695 (5ᵗʰ Cir. 2005) (citing *U.S. v. Cyprian*, 197 F.3d 736,

740 (5ᵗʰ Cir. 1999.  The reviewing court is not authorized to substitute its

interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775

F.2d 595, 598 (5ᵗʰ Cir. 1985).

At the time of the offense, aggravated rape was defined in La.R.S.

14:42(A)(4) as a rape committed upon a victim under the age of eighteen years.

Rape is defined in La. R.S. 14:41 as the act of anal, oral, or vaginal sexual

intercourse with the person's lawful consent. "Emission is not necessary, and any

sexual penetration, when the rape involves vaginal or anal intercourse, however

slight, is sufficient to complete the crime." La.R.S. 14:41(B).

Sexual battery was defined in La.R.S. 14:43.1 as,

... the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender[4]:

(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or

(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.

Indecent behavior with juveniles is defined in La. R.S. 14:81(A) as:

...the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons,[5] with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense.

In light of the above, viewing the evidence in the light most favorable to the prosecution as is required by *Jackson* and its progeny, the evidence presented at trial was more than sufficient to sustain petitioner's convictions of aggravated rape, sexual battery and indecent behavior with juveniles on federal *habeas* review. Considering the "great weight" afforded to the state court's determination and the above summarized evidence, the undersigned finds that "any rational trier of fact

---

[4] The Third Circuit found that the State proved C.J. did not consent to the touching, but that Defendant testified that he was thirty-three at the time of trial.

[5] As Defendant testified that he was thirty-three at the time of trial, the age difference requirement was satisfied.

could have found the essential elements of the crime beyond a reasonable doubt."

For these reasons, petitioner's sufficiency of the evidence claim does not warrant federal *habeas* relief.

## IV. Prosecutor Vouched For the Credibility Of Its Witness - Claim Three

Petitioner asserts in Claim 3 he was denied due process under the Louisiana Constitution Art. 1 §§ 2, 16 and under the Sixth and Fourteenth Amendments to the United States Constitution when the prosecutor "vouched" for the credibility of its witnesses, thereby denying petitioner his right to a fair trial and impartial jury. The statement at issue in the prosecutor's closing statement indicated that the jury not only heard the testimony of the expert witness, but also visually saw pictures supporting the expert's opinion.

In *U.S. v. Carter*, 953 F.2d 1449 (5th Cir. 1992), the Fifth Circuit considered comments made by the prosecutor in the closing argument which referenced the police officer witnesses as "brave people ... who risked their lives for the citizens...." The Fifth Circuit stated, "[petitioner] did not object to any of these references at trial. Accordingly, we will reverse only if the comments rise to the level of plain error, i.e., if the error is 'obvious, substantial, and so basic and prejudicial that the trial lacks the fundamental elements of justice.'" *Id.* at 1460 (citing *United States v. Simpson*, 901 F.2d 1223, 1227 (5th Cir.1990). The court

opined, "[a]lthough we agree that much of the rhetoric of the prosecutor was not likely to advance the goal of making the trial a neutral arena for the presentation of evidence upon which alone the jury must base its determination of a defendant's innocence or guilt, *United States v. Garza*, 608 F.2d 659, 662 (5th Cir.1979), we cannot say in light of the evidence in this case and the particular remarks made that the comments denied [petitioner] his basic right to a fair trial. The abuse to be guarded against is a prosecutor invoking considerations that are outside of the record evidence and would not have been deemed admissible evidence at trial." *Id.* at 1460.

The proper inquiry into this issue should be "whether the prosecutor's expression might reasonably lead the jury to belief that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt." *U.S. v. Ellis*, 547 F.2d 863, 869 (5th Cir. 1977). Courts have  noted that while it is "'dangerous business' for a prosecutor to vouch for the honesty of its witnesses, comments upon testimony in light of the record are proper. *Id*. (citing *United States v. Davis*, 487 F.2d 112, 125 (5th Cir. 1973). Here, the prosecutor did not personally vouch for the credibility of his expert witness. His comments in the opening and closing statements were merely credibility references to the expert's testimony and the evidence presented—it was not additional evidence not

presented at trial as petitioner contends. It is not erroneous or improper for the

prosecutor, during closing argument, to ask the jury to believe the evidence

presented at trial which supports the state's case. *Howard v. Warden, Louisiana*

*State Penitentiary*, 2015 WL 3875219, at *10 (W.D.La.,2015). Since the

prosecutor's closing argument reflects only proper arguments as to the weight of

the evidence, this ground for relief is without merit.

As to petitioner's contention that these comments amounted to prosecutorial

misconduct, when a habeas petitioner alleges a generic due process violation based

on improper prosecutorial comments, a reviewing court must determine whether

the remarks, "in the context of the entire trial, were sufficiently prejudicial to

violate [the defendant's] due process rights." *Donnelly v. DeChristoforo*, 416 U.S.

637, 639 (1974). A petitioner may obtain relief only if "the prosecutors' comments"

so infected the trial with unfairness as to make the resulting conviction a denial of

due process." *Darden v. Wainwright*, 477 U.S. at 180 (quoting *Donnelly*, 416 U.S.

at 643). "The prosecutor's remarks do not present a claim of constitutional

significance unless they were so prejudicial that [the petitioner's] state court trial

was rendered fundamentally unfair within the meaning of the Fourteenth

Amendment." *Rushing v. Butler*, 868 F.2d 800, 806 (5th Cir.1989). A trial is

fundamentally unfair only if the prosecutor's remarks evince either persistent or

31

pronounced misconduct, or the evidence was so insubstantial that in all probability but for the remarks the petitioner would not have been convicted. *Id*. When attacked, prosecutorial comments are not considered in isolation, but are evaluated in the context of the entire trial as a whole, including the prosecutor's entire closing argument. *Rushing*, at 806.

Courts apply a two-step analysis to claims of prosecutorial misconduct. *United States v. Insaulgarat*, 378 F.3d 456, 461 (5th Cir.2004). In the first step, the court must assess whether the prosecutor made an improper remark. *Id*. If the prosecutor has made an improper remark, the court must ask whether the defendant was prejudiced. *Id*. Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected. A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone. The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict. *United States v. Holmes*, 406 F.3d 337, 356 (5th Cir. 2005).

The court generally looks to three factors in deciding whether any misconduct casts serious doubt on the verdict: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *United*

*States v. Mares*, 402 F.3d 511, 515 (5ᵗʰ Cir. 2005).

Here, the prosecutor's remarks were not improper, nor did they prejudice the petitioner's right to a fair trial. The evidence was overwhelmingly in support of a conviction and the prosecutor properly cited the expert witness and the evidence upon which she relied. Further, because petitioner did not contemporaneously raise an objection at trial, this allegation is procedurally defaulted and/or waived pursuant to La. C.Cr.P. art. 841(A), the contemporaneous objection rule:

> In order to preserve an issue for appeal, a party must make a contemporaneous objection. Louisiana Code of Criminal Procedure Article 841(A) provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. Louisiana courts have consistently recognized this as the contemporaneous objection rule, noting its dual purposes: (1) to put the trial judge on not the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection. *State v. Potter*, 591 So.2d 1166, 1169, n. 6 (La.1991).

*State v. Dossman*, 940 So.2d 876, 885 (La.App. 3 Cir.,2006).

## V. Equal Protection And Due Process Based On The Statute - Claim Five

Petitioner contends he was denied equal protection and due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Louisiana Constitution Article 1, 2, 3, and 16, because the statute proscribing aggravated rape was selectively and discriminatorily applied to petitioner based on his race. In particular, petitioner contends that "specifically white father [sic]

accused of having sexual intercourse with their white daughters" were tried under the aggravated incest statute instead of aggravated rape.

In order to prevail in a defense of selective prosecution, a defendant must meet two requirements which we have characterized as a "heavy burden." *United States v. Johnson*, 577 F.2d 1304, 1308 (5th Cir.1978). First, he must make a *prima facie* showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted. *United States v. Tibbetts*, 646 F.2d 193, 195 (5th Cir.1981). Second, having made the first showing, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious. *Id*. The showing of invidiousness is made if a defendant demonstrates that the government's selective prosecution is actuated by constitutionally impermissible motives on its part, such as racial or religious discrimination. *United States v. Lichenstein*, 610 F.2d 1272, 1281 (5th Cir. 1980).

Petitioner attempts to show that his prosecution was constitutionally invidious by citing the Court to a litany of cases which he contends proves his prosecution for aggravated rape would have been under aggravated incest had he been white. The cases, however, do not reference the race of the victims or the defendants. Therefore, the race of the defendants cannot be determined—i.e. that

34

they are Caucasian as opposed to African American.

As petitioner has not shown that he has been "singled out" for prosecution, he fails to prove that his prosecution was constitutionally invidious because it was the result of an impermissible motive on the government's part. This allegation is without merit.

**<u>CONCLUSION</u>**

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from**

attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.   **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed at Lafayette, Louisiana this 24th day of March, 2016.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**